UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



DARIA L. AVENT,

                    Plaintiff,

v.

                                    Civil Action No. 3:11-CV-37

KRAFT FOODS GLOBAL, INC.,

                    Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment (ECF No. 34), filed by Kraft Foods Global, Inc. ("Kraft" or "Defendant"). The Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court GRANTS Defendant's Motion for Summary Judgment in its entirety.

### I. BACKGROUND

#### A. Kraft's Attendance Program

Kraft manufactures and sells food products internationally and operates a bakery facility in Richmond, Virginia ("Richmond Bakery"), where it employs approximately five hundred sixty-five people. In 1999, Plaintiff Daria L. Avent ("Avent" or "Plaintiff") began employment in the Richmond Bakery. The terms of Plaintiff's employment were controlled by agreements between Kraft and the Local 358 of the Bakery, Confectionary, Tobacco Workers and Grain Millers International Union, AFL-CIO ("Union"), which represented

1

Plaintiff and all other hourly employees at the Richmond Bakery. During all times relevant to this action, Tom Carlyle worked as the Human Resources Manager at the Richmond Bakery, Holly Wilson worked as a nurse, and Sherri Palmer Manzell served as the FMLA Coordinator.

Kraft maintained an Attendance Program that was a basic no-fault policy which governed the treatment of absences by Union members and assigned employees "points" or "incidents" for unexcused absences from work. Under the Attendance Program, any absence up to four days resulted in one point for each day missed; an unexcused absence on the last scheduled day before a holiday or the next scheduled day after a holiday resulted in two points per absence; and a failure to report an absence within specific timeframes resulted in two points. However, absences taken pursuant to approved FMLA leave did not result in attendance points. Moreover, even if an employee did not qualify for FMLA leave, employees could have one multiple-day absence due to illness per twelve-month period without incurring a point, subject to physician documentation ("short-note" exception). Another exception allowed for one consecutive absence of ten scheduled days or more per rolling six-month period, without incurring any points, even in the absence of an approved FMLA leave, subject to physician documentation ("long-note" exception).

The Kraft Attendance Program implemented a three-step warning system based on its point scheme. An employee who accumulated six points in a six month period was placed at Step I, which consisted of a written warning and a three-month attendance probationary period. Any absence other than for FMLA-approved leave, vacation, holidays, death in the family, or the like during the three-month period automatically advanced an employee to Step II, which entailed a one-week unpaid suspension and a four-month

2

probationary period. Any unexcused absence in the probationary period resulted in automatic advancement to Step III—suspension pending termination of employment.

Pursuant to FMLA policy, eligible Kraft employees were entitled to twelve weeks of unpaid leave per year for absences due to "serious health conditions." (Def.'s Mem. Supp. Mot. Summ. J. ("Def's Mem.") 5.) As of January 1, 2007, Kraft used the "rolling backward" leave year to determine whether an employee was entitled to FMLA leave by looking back twelve months from the absence and calculating the amount of FMLA leave taken. (Def's Mem. 5.) If an employee was absent for a reason that qualified both as FMLA leave and leave under Kraft's short-term disability ("STD") policy, then the FMLA leave ran concurrently with the STD leave. Thus, when determining the balance of an employee's FMLA leave, Kraft counted both FMLA leave and STD leave.

Additionally, if days missed under an approved STD leave were not otherwise excused by the Attendance Program (such as by an approved FMLA absence or under a "long-note" exception), then those days were not excused under the Attendance Program and were treated as any other unexcused absence under the Attendance Program. Kraft used a computerized phone system for employees to report absences during the period of Plaintiff's employment. Beginning in 2007, Kraft asked employees to also coordinate with FMLA coordinator, Palmer, to determine whether an absence might potentially be counted as FMLA leave and to help the employee complete any required paperwork for the leave.

The Richmond Bakery took a stern approach with respect to falsified or fraudulent excuse notes and consistently terminated employees who submitted falsified notes or fraudulent documentation to support absences. An employee's submission of one falsified excuse note alone was sufficient grounds for immediate termination.

3

## B. Plaintiff's Medical Leave and Termination

Kraft contends that it terminated Plaintiff's employment for two reasons, either of which would have warranted termination on its own. First, Kraft asserts that Plaintiff submitted a fraudulent doctor's note to excuse her absences on January 17 and 18, 2008. Plaintiff left a message for Palmer on January 17 in which Plaintiff stated that her son was sick and that she would like to use FMLA leave to cover her absence. Plaintiff submitted a note when she returned to work on January 22 from the Pediatric Center (the "Center") stating that the Center had seen her son on January 17 and requesting that her absence be excused. Kraft granted Plaintiff's request for FMLA leave for the January 17 and 18 absences as Plaintiff had previously applied and been approved for FMLA leave in connection with her son's various medical conditions, as well as her own chronic medical conditions.

Based on the similarity in style to Plaintiff's own handwriting and the appearance of the note which suggested it had been photocopied rather than taken from a notepad, Wilson contacted the Center, and the Center confirmed in writing that the January 17 note was invalid.[1] Based on the information provided by the Center and Wilson, Carlyle sent Plaintiff a letter on March 19, 2008, asking her to sign an authorization form that would allow Kraft to authenticate several excuse notes she submitted in the previous two years, including the January 17 note. Plaintiff refused to sign the authorization.[2] Kraft did not

---

[1] Plaintiff claims she did not knowingly submit a fraudulent note. (Pl.'s Resp. Def.'s Mot. Summ. J ("Pl.'s Opp'n") 10-11.) She asserts that she spoke with the Pediatric Center (the "Center") on the phone on January 17 about her son's condition and requested a letter from the office. She claims that because the office was closed, she picked up the note taped to the office door, as the Center had done frequently in the past for Plaintiff after hours. (Pl.'s Opp'n 10-11.)

[2] Plaintiff notes that Kraft did not require a doctor's note from employees to confirm FMLA leave requests. (Pl's Opp'n 8 (citing Wilson Dep. 34).)

4

discuss the fraudulent note further until a meeting with Plaintiff on April 21, 2008. At the meeting, Carlyle gave Plaintiff the opportunity to provide any additional information related to the apparent submission of the fraudulent note within a day.

Second, Kraft contends Plaintiff incurred sufficient unexcused absences to warrant termination after exhausting her FMLA leave under the Attendance Program. Plaintiff requested and used FMLA leave regularly from 2001 until her termination in 2008 in connection with both her and her son's medical conditions. On July 27, 2007, Kraft disciplined Plaintiff for her accumulation of more than six attendance points under Step I, which involved three months of attendance probation. Plaintiff accrued an additional attendance point for three unexcused absences in October 2007 which advanced her to Step II discipline under the Attendance Program: one week unpaid suspension and an additional four months of attendance probation.

As of April 21, 2008, Plaintiff requested and was approved for FMLA leave to cover her absences from work for a total of eighty-nine (89) days in the previous twelve months. She did not work at all from January 31 through April 20, 2008. Plaintiff applied for and Kraft's STD carrier, Aetna, approved STD benefits from February 7, 2008, through April 20, 2008. Plaintiff exhausted her 12-week FMLA entitlement after her absence on February 27, 2008. Kraft did not provide Plaintiff periodic updates concerning her FMLA absences, nor did Kraft notify Plaintiff that she had exhausted her FMLA leave, as Kraft did not provide its employees with information concerning the status of their FMLA leave. Plaintiff's absence on February 28 and some of her absences thereafter were unexcused which warranted a move to Step III discipline—suspension pending termination—because she was still on probation following her 2007 suspension.

Upon release by her doctor to return to work on April 21, Kraft did not permit Plaintiff to return to work. Carlyle met with Plaintiff to discuss her employment status and asked her to provide any additional information or documentation for consideration in Kraft's decision whether to terminate her employment. She failed to submit any documentation or information regarding the fraudulent note or Kraft's conclusion that she had exhausted her FMLA leave and incurred sufficient unexcused absences to warrant termination. On May 23, 2008, Carlyle sent Plaintiff a letter, informing her of Kraft's decision to terminate her employment.

On three separate occasions, November 14, 2007, May 13, 2008, and August 6, 2008, Plaintiff filed a Charge of Discrimination with the EEOC alleging disability discrimination and retaliation. In all three instances, the EEOC was unable to confirm the allegations and issued her a right-to-sue notice on June 25, 2010, for the three charges. Plaintiff also filed complaints with the Department of Labor ("DOL") concerning her FMLA absences. As a result of an investigation by the DOL into Kraft's treatment of Plaintiff's FMLA absences, her FMLA was subsequently corrected for weekend periods and overtime shifts. Specifically, in March 2008, Kraft rescinded a total of seven attendance points assessed to Plaintiff in February and July 2007.[3]

On September 22, 2010, Plaintiff filed suit against Kraft in the Circuit Court for the City of Richmond. On January 14, 2011, Kraft removed the action to this Court and on July 14, 2011, Plaintiff filed her Amended Complaint. Count One of Plaintiff's Amended Complaint alleges retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title

---

[3] Plaintiff contends that had Kraft removed the disciplinary points in July 2007, she would not have been assessed points for the October 13-15, 2007 absences, and she would have been eligible for an excused "long-note" absence from January 31, 2008, through April 21, 2008. (Pl.'s Opp'n 10 (citing Carlyle Dep. 25-27).)

VII"). Count Two alleges violation and retaliation under the Family and Medical Leave Act of 1993 ("FMLA"). Kraft now moves for summary judgment with respect to Plaintiff's Amended Complaint.

## II. LEGAL STANDARD

A motion for summary judgment lies only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). All "factual disputes and any competing, rational inferences [are resolved] in the light most favorable to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted). In making its decision, a court must look to the affidavits or other specific facts pled to determine whether a triable issue exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1996). Where there is no genuine dispute as to any material fact, it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted). "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006). Summary judgment should not be granted, however, if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 258.

## III. DISCUSSION

### A. Statute of Limitations

#### 1. Applicable Law

FMLA claims are generally subject to a two-year statute of limitations, 29 U.S.C. § 2617(c)(1), which is extended to three years if the alleged FMLA violation is willful, 29 U.S.C. § 2617(c)(2). A willful violation is shown when an employer knew or showed reckless disregard regarding whether its conduct was prohibited by the FMLA. *Settle v. S.W. Rodgers Co.*, 998 F. Supp. 657, 663 (E.D. Va. 1998), *aff'd* 182 F.3d 909 (4th Cir. 1999) (unpublished table decision) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130, 135 (1988)). In other words, to prove a willful violation, a plaintiff must go beyond showing that its employer was merely negligent in determining the employer's legal obligations under the FMLA. *See McLaughlin*, 486 U.S. at 133.

#### 2. Parties' Arguments

Kraft terminated Plaintiff's employment on May 23, 2008, and Plaintiff filed her lawsuit on September 22, 2010—more than two years later. Kraft contends that Plaintiff's FMLA interference and retaliation claims are barred by the two-year statute of limitations because Plaintiff has not met her burden of showing that Kraft's alleged conduct was willful under the FMLA in order to extend the limitations period to three years. Kraft argues that not only did it not violate the FMLA, but even if it had, Plaintiff has set forth no evidence that Kraft knew terminating her employment was prohibited by the FMLA or showed reckless disregard for whether Plaintiff's termination was prohibited by the FMLA. Kraft argues that it had a good faith belief that Plaintiff falsified a doctor's note, which Plaintiff herself admits—and a doctor at the Center confirms—to be falsified. Moreover, Kraft

asserts that Plaintiff failed to sign an authorization form to allow Kraft to speak with her son's doctors about the note and failed to produce any other evidence to suggest the note was not fraudulent. For these reasons, Kraft contends it was reasonable—not willful—in terminating Plaintiff's employment and therefore Plaintiff's claims are barred by the two-year statute of limitations.

In response, Plaintiff contends that federal courts have been reluctant to dismiss FMLA cases where "willfulness" is a fact-intensive issue to be submitted to the jury. Plaintiff also argues that although several Kraft employees were knowledgeable about the FMLA, Kraft violated FMLA notice requirements and its own policy by failing to provide Plaintiff with written notice of the status of her FMLA leave within five days. Plaintiff further argues that Kraft continuously made *ex post facto* corrections to her attendance records and FMLA leave records and wrongly charged her with FMLA leave for weekend days and overtime in violation of the FMLA.[4] Therefore, Plaintiff argues that whether Kraft willfully violated the provisions of the FMLA is a question of fact for a jury.

### 3. Analysis

The Court agrees that Plaintiff's proffered evidence does not support a showing that Kraft willfully violated the FMLA; therefore, Plaintiff's FMLA retaliation and interference claims are barred by the two-year statute of limitations. In contrast to Plaintiff's contention that federal courts are reluctant to dismiss a FMLA case on the basis that the issue of

---

[4] Plaintiff also raises the issue that Kraft conducted surveillance of Plaintiff on August 31, 2007, which was later discovered to be a day that Plaintiff was not scheduled to work because she had been suspended for conduct that occurred the previous day. (Pl.'s Opp'n 10, 15 (citing Carlyle Dep. 28-29).) In any event, surveillance of an employee when an employer suspects abuse of FMLA leave does not amount to a violation of the FMLA and does show willful conduct on Kraft's part. *See Brown v. Conopco, Inc.*, No. CCB-06-2668, 2007 U.S. Dist. LEXIS 79933, at *6, 20 (D. Md. Oct. 24, 2007).

willfulness is a fact-intensive issue to be submitted to trial, the Fourth Circuit has not shied from affirming summary judgment dismissal of FMLA claims where the plaintiff has failed to demonstrate that the employer willfully violated the statute. *See, e.g., Honeycutt v. Balt. Cty.*, No. 07-1682, 2008 U.S. App. LEXIS 10719 (4th Cir. May 20, 2008); *Settle v. S. W. Rodgers Co.*, No. 98-2312, 1999 U.S. App. LEXIS 15745 (4th Cir. July 12, 1999); *see also Davis v. Navy Fed. Credit Union*, No. 1:11cv01282 (JCC/TCB), 2012 U.S. Dist. LEXIS 37884 (E.D. Va. Mar. 20, 2012).

Additionally, the record reflects that Kraft corrected Plaintiff's attendance and FMLA leave records only once in March 2008 at the request of the DOL. Mere improper calculation of leave does not amount to willfulness. *See Davis*, 2012 U.S. Dist. LEXIS 37884, at *14. Furthermore, any failure by Kraft to provide notice to Plaintiff regarding the status of her FMLA leave, even if at the request of Plaintiff, did not constitute a violation of the FMLA under the regulations in place at the time of her employment. In support of her argument that Kraft violated the FMLA by failing to comply with FMLA notice requirements, Plaintiff repeatedly cites to revised FMLA regulation 29 C.F.R. § 825.300, which was not in effect during Plaintiff's employment with Kraft. Therefore, even if Kraft failed to notify Plaintiff of her FMLA leave status upon her request, this does not constitute a willful violation as Kraft could not have shown reckless disregard for an FMLA requirement that did not exist. Moreover, Kraft's purported violations of its own internal policies do not amount to a violation of the FMLA or willfulness on Kraft's part. *See Bullock v. Kraft Foods, Inc.*, No. 3:11CV36-HEH, 2011 U.S. Dist. LEXIS 134481, at *21 (E.D. Va. Nov. 22, 2011) ("[P]urported maladministration of [internal] policies does not support a cause

of action under the FMLA.") (citing *Miller v. Personal-Touch of Va., Inc.*, 342 F. Supp. 2d 499, 512 (E.D. Va. 2004).

Ultimately, Plaintiff has failed to set forth any evidence to support a finding that Kraft knew or showed reckless disregard for whether its conduct was prohibited by the FMLA. Instead, the record shows that Kraft's conduct was based on a reasonable belief that Plaintiff submitted a fraudulent doctor's note and accumulated excessive unexcused absences in violation of Kraft's Attendance Program. Because Plaintiff fails to proffer any evidence to suggest that Kraft's conduct rises to the level of willful, her retaliation and interference claims under the FMLA are barred by the two-year statute of limitations. Therefore, the Court GRANTS summary judgment in favor of Kraft on Plaintiff's FMLA claims in Count Two of her Amended Complaint.[5]

### B. Title VII Retaliation Claim

#### 1. Applicable Law

Title VII makes it unlawful "for an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice [under Title VII]." 42 U.S.C. § 2000e-3(a). To state a prima facie case of retaliation under Title VII, a plaintiff must establish that: (1) she engaged in a protected

---

[5] Even had the Court reached the merits of Plaintiff's FMLA claims, Plaintiff fails to show that Kraft's legitimate, non-retaliatory reasons for Plaintiff's termination—Plaintiff's submission of a fraudulent doctor's note and excessive unexcused absences—were pretextual. *See Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 550-51 (4th Cir. 2006) (analyzing FMLA retaliation claim under the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973)). Moreover, Kraft's termination of Plaintiff based in part on her submission of a fraudulent doctor's note would likely serve to defeat Plaintiff's FMLA interference claim. *See Yashenko*, 446 F.3d at 549 ("To avoid liability on an interference claim, an employer that denies restoration to an employee returning from FMLA leave 'must be able to show that [the] employee would not otherwise have been employed at the time reinstatement is requested.'" (quoting 29 C.F.R. § 825.216(a)). Thus, summary judgment in favor of Kraft would have nonetheless been the likely result.

activity, (2) the employer took adverse action against her, and (3) there was a causal connection between the protected activity and the adverse action. *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007). Retaliation claims are generally analyzed under the burden-shifting framework of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-03 (1973). *See Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (en banc) (noting this expressly). Under the *McDonnell Douglas* burden-shifting framework, after the plaintiff establishes her prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory, reason for its action. *See McDonnell Douglas Corp.*, 411 U.S. at 802-03. The employer is not required to prove that the proffered reason was the actual reason for the alleged adverse employment action; instead, the reason must only be "legally sufficient to justify a judgment" in favor of the employer. *Mereish v. Walker*, 359 F.3d 330, 335 (4th Cir. 2004) (internal quotation marks omitted) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)). If the employer articulates a legitimate, nondiscriminatory reason then the prima facie case disappears and the burden shifts back to the plaintiff to show that the employer's proffered reason is pretextual. *Id.* at 334. The plaintiff must show that the articulated reason is "unworthy of credence' or by offering other forms of circumstantial evidence sufficiently probative of [retaliation]." *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004) (internal quotation marks omitted) (citing *Mereish*, 359 F.3d at 336).

### 2. Parties' Arguments

Kraft contends that Plaintiff's Title VII retaliation claim fails because she is unable to state a prima facie case. According to Kraft, while Plaintiff's employment was terminated approximately one week after she filed an EEOC charge, temporal proximity alone is not

enough for Plaintiff to establish a prima facie case. Kraft asserts that Plaintiff filed an EEOC charge six months before termination but was not terminated at that point which suggests that Kraft's termination of Plaintiff's employment after she filed her second EEOC charge was not done in retaliation. Moreover, Kraft argues, even if Plaintiff could make out a prima facie case, Kraft has proffered two legitimate reasons for its decision to terminate Plaintiff's employment, and Plaintiff has presented no evidence to show that Kraft's proffered reasons are pretextual.

Plaintiff declined to respond to this issue in her Response to Defendant's Motion for Summary Judgment. (*See* Pl.'s Opp'n 33 ("Avent will not respond to the issue regarding retaliation under Title VII.").) Thus, Kraft argues that Plaintiff has waived any argument as to her Title VII retaliation claim, and requests that the Court grant Kraft's motion for summary judgment on Plaintiff's Title VII retaliation claim.

### 3. Analysis

Kraft concedes that Plaintiff has met the first two elements of a prima facie retaliation claim under Title VII. She engaged in protected activity, and she suffered an adverse employment action. The Court finds that Plaintiff has also sufficiently pled the third element of causation—that she was terminated "*because* [she] engaged in a protected activity." *See Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007) (internal quotation marks omitted). An inference of a causal connection between the protected activity and the adverse employment action can be created by temporal proximity, if that proximity is very close and the defendant had knowledge of the protected activity. *Martin v. Scott & Stringfellow, Inc.*, 643 F. Supp. 2d 770, 789-90 (E.D. Va. 2009). It is undisputed that Kraft terminated Plaintiff's employment roughly one week after she filed an EEOC charge.

"[E]vidence that the alleged adverse action occurred shortly after the employer became aware of the protected activity is sufficient to 'satisfy the less onerous burden of making a prima facie case of causation.'" *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (quoting *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)). Therefore, Plaintiff has sufficiently pled the requisite causation in support of a prima facie retaliation claim.

Plaintiff's claim, however, does not survive the *McDonnell-Douglas* burden-shifting framework because Kraft has proffered two legitimate, non-retaliatory reasons for its decision to terminate Plaintiff's employment and Plaintiff has failed to show that Kraft's reasons are pretextual. Kraft reasonably believed Plaintiff submitted a falsified doctor's note and accumulated excessive absences under the company's Attendance Program. The burden then shifts back to Plaintiff to show evidence of pretext which Plaintiff fails to do. There is no evidence in the record to suggest that Kraft terminated Plaintiff's employment or denied certain leave requests for any reason other than its legitimate belief that Plaintiff falsified a doctor's note and violated the Attendance Program. As the Fourth Circuit has stated, the proper consideration for the Court is:

> whether the reason for which the defendant discharged the plaintiff was discriminatory. Thus, when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not [the Court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.

*DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410-11 (7th Cir. 1997)). Because Kraft has proffered legitimate, non-discriminatory reasons for Plaintiff's termination, and Plaintiff provides no evidence that Kraft's stated reasons were pretextual, Plaintiff has failed to

show a genuine issue of material dispute with respect to whether she was retaliated against in violation of Title VII, and summary judgment is appropriate in favor of Kraft on Plaintiff's retaliatory discharge claim. Accordingly, the Court finds summary judgment appropriate in favor of Kraft on both Counts One and Two of Plaintiff's Amended Complaint.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's Motion for Summary Judgment.

Let the Clerk send a copy of this Memorandum Opinion to all parties and counsel of record.

An appropriate Order shall issue.

> _____/s/_____
> James R. Spencer
> United States District Judge

ENTERED this \_\_\_15th\_\_\_ day of August 2012.